UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

MARK SAM,
ON BEHALF OF HIMSELF AND                     Civil Docket No.:
ALL OTHERS SIMILARLY SITUATED                    15-cv-3222-WHP-RLE

                                       Plaintiff,

         -against-                                   CLASS ACTION


MIDLAND CREDIT MANAGEMENT, INC.,
MIDLAND FUNDING, LLC, AND
ENCORE CAPITAL GROUP, INC.

                                  Defendants.
------------------------------------------------------------x


**AMENDED MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL AND
DISMISS FOR LACK OF VENUE**


MARSHALL DENNEHEY WARNER COLEMAN
& GOGGIN
Wall Street Plaza
88 Pine Street 21st Floor
New York, NY 10005
Tel: 212-376-6433
mbjohnson@mdwcg.com
*Attorneys for Defendants Midland Credit
Management, Inc., Midland Funding, LLC and
Encore Capital Group, Inc.*

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................ 1

II.  STATEMENT OF FACTS ............................................................................ 2

   A.   THE PARTIES TO THE SUIT. ............................................................. 2

   B.   THE COMPLAINT. ................................................................................ 3

   C.   SERVICES PERFORMED BY SELIP & STYLIANOU ON BEHALF OF MIDLAND CREDIT. ................................................................................ 3

   D.   PLAINTIFF⸢S ACCOUNT. ..................................................................... 5

   E.   PASHKIN'S WORK AT S&S ON BEHALF OF MIDLAND CREDIT AND MIDLAND FUNDING ...................................................................... 6

   F.  OTHER LITIGATION ARISING OUT OF PASHKIN'S REPRESENTATIONS ADVERSE TO HIS FORMER CLIENT MIDLAND CREDIT AND HIS FORMER FIRM. ..................................................................................... 10

III.   PASHKIN SHOULD BE DISQUALIFIED ................................................. 12

   A.   CALIFORNIA LAW GOVERNS THE PRESENT MOTION TO DISQUALIFY. 13

      1.   The Agreement Provides that California Law Applies. ...................... 13

      2.   New York Law Supports Enforcement of Contractual Choice of Law Provisions ................................................................................... 14

   B.   CALIFORNIA LAW PROVIDES THAT PASHKIN SHOULD BE DISQUALIFIED FOR ADVOCATING AGAINST HIS FORMER CLIENT IN A MATTER SUBSTANTIALLY RELATED TO HIS FORMER REPRESENTATION. □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ ..16

   C.   NEW YORK LAW ALSO MANDATES PASHKIN'S DISQUALIFICATION . 19

IV.   THIS ACTION SHOULD BE DISMISSED AS VENUE IS LACKING .......... 21

V.  IF THIS ACTION IS NOT DISMISSED, IT SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF NEW YORK ...................................................... 23

VI.   CONCLUSION ................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

AIG Fin. Prod. Corp. v. Pub. Util. Dist. No. 1, 675 F. Supp. 2d 354 (S.D.N.Y. 2009) ...................................................................................... 22

Anderson v. Ungar, N.Y.S.2d 310 (N.Y. App. Div. 1999) .................................. 23

Boss v. Am. Express Fin. Advisors, Inc., 15 A.D.3d 306 (1st Dept. 2005), aff'd 6 N.Y.3d 242 (2006) ................................................................. 14

Capital One Bank (USA), N.A. v. Mule, Index No. CEC 5490-13 (Dist. Court of the County of Suffolk, First Dist.) ...................................................... 12

Commercial Union Ins. Co. v. Marco Int'l Corp., 75 F. Supp.2d 108 (S.D.N.Y. 1999) ...................................................................................... 21

Cooney v. Osgood Mach., 612 N.E.2d 277 (N.Y. 1993) ................................. 14

Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408 (2d Cir. 2005) .............. 24

Evans v. Artek Sys. Corp., 715 F.2d 788 (2d Cir. 1983) .......................... 15, 20

Finucane v. Interior Constr. Corp., 264 A.D.2d 618 (1st Dept. 1999) ............. 14

Franzone v. Lask, 14 Civ. 3043 (GHW)(GWG), 2015 U.S. Dist. LEXIS 38606 (S.D.N.Y. March 26, 2015) ...................................................................... 20

Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962) .............................................. 24

Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream, 409 F.3d 127 (2d Cir. 2005). .................................................................... 15, 19, 20

HF Ahmanson & Co. v. Salomon Bros., Inc., 229 Cal. App. 3d 1445 (1991) . 16, 17

Hugh O'Kane Elec. Co., LLC v MasTec North America, Inc., 19 A.D.3d 126, 797 N.Y.S.2d 45 (1st Dept 2005) ...................................................... 14

Hull v. Celanese Corp., 513 F.2d 568 (2d Cir. 1975) ...................................... 20

In re County of Los Angeles, 223 F.3d 900 (9th Cir. 2000) ............................ 16

Jessen v. Hartford Cas. Ins. Co., 111 Cal. App. 4th 698 (2003) ....................... 17

Mark Sam v. Selip & Stylianou, LLP, Index No. 602334/2015 (Sup Ct, Nassau County) ................................................................................... 12

Midland Credit Management v Vargas, Index No. CV-071331-03/KI (Civ Ct, Kings County) ................................................................................ 10

Midland Funding LLC v Delillo, Index No. 14614-08 (Sup Ct, County of Westchester) ................................................................................... 10

Midland Funding, LLC v Bryant, Index No. CV-40979-07/KI (Civ Ct, Kings County) .......................................................................................... 10

Midland Funding, LLC v Kafka, Index No.110798-14 (Sup Ct, Ontario County) .......................................................................................... 10

Midland Funding, LLC v. Mule, Index No. CECV 4022-13 (Suffolk Dist Ct, First Dist). ...................................................................................... 12

Midland Funding, LLC v Pomes, Index No. Index No. 5365-14/NY (Civ Ct, New York County) ................................................................................. 10

Midland Funding, LLC v Ritter, Index No. CV-022850-14/NY (Civ Ct, New York County) ................................................................................. 10

<u>Midland Funding, LLC v Sahno,</u> Index No. CV-035025-12/KI (Civ Ct, Kings County) ........................................................................................ 10

<u>Midland Funding, LLC v. Mark Sam</u>, Index No. CV-006853-07/DU (Dunkirk, NY City Ct) ....................................................................... 11

<u>Midland Funding, LLC v Yearling</u>, Index No. CV-025870-10 (Nassau County Dist Ct, First District) ..................................................... 10

<u>Midland Funding, LLC v. Digiacomo</u>, Index No. CV-003276-10/KI (Civ Ct, Kings County)....................................................................... 10

<u>Minnette v. Time Warner</u>, 997 F.2d 1023 (2nd Cir. 1993) ............................ 22

<u>Montgomery v. Super. Ct.</u>, 186 Cal. App. 4th 1051, 112 Cal. Rptr. 3d 642 (2010) .............................................................................. 15, 17, 19

<u>Nichols Inst. Diagnostics, Inc. v. Scantibodies Clinical Lab., Inc.</u>, Civ. No. 02CV0046-B(LAB), 2002 U.S. Dist. LEXIS 28406 (March 21, 2002)............ 16

<u>Piven v. Harwood Feffer LLP</u>, 14 Civ. 6601 (LAK), 2015 U.S. Dist. LEXIS 35516 (S.D.N.Y. March 11, 2015)............................................................ 15, 21

<u>PT United Can Co. v. Crown Cork & Seal Co.</u>, 138 F.3d 65 (2d Cir. 1998)...... 22

<u>Mark Sam v. Cohen & Slamowitz, LLP</u>, No. 1:14-cv-00611-JTC (W.D.N.Y. July 29, 2014) ............................................................................... 12

<u>Sam v. Selip & Stylianou</u>, 2:15-cv-02780-JS-GRB (W.D.N.Y.) ........................ 25

<u>Selip & Stylianou, LLP v. Pashkin</u>, Index No. 60238/2015 (Sup Ct, Nassau County, April 30, 2015)............................................................. 11

<u>Simmons v. Morgan Stanley Smith Barney, LLC</u>, No. 11cv2889 WQH-MDD, 2014 U.S. Dist. LEXIS 29797 (S.D. Cal. March 6, 2014) ............................ 15

<u>Sunbeam Prods., Inc. v. Oliso, Inc.</u>, No. C 13☐ 3577 SI, 2014 U.S. Dist. LEXIS 29058 (N.D. Cal. Mar. 4, 2014) ................................................... 16

<u>Thomas v. Burrus</u>, N.Y.S.2d 412 (N.Y. App. Div. 2009) ................................. 23

<u>Trone v. Smith</u>, 621 F.2d 994 (9th Cir. 1980) .............................................. 17

<u>United States ex rel. Sero v. Preiser</u>, 506 F.2d 1115 (2d Cir. 1974 ................ 24

<u>United States v. Oberoi</u>, 331 F.3d 44 (2d Cir. 2003....................................... 20

<u>Universal Marine Medical Supply, Inc. v. Lovecchio</u>, 8 F.Supp.2d 214 (E.D.N.Y. 1998 ......................................................................................... 22

**Statutes**

15 U.S.C. § 1692a <i>et seq.</i> ....................................................................... 3

28 U.S.C. § 1331............................................................................................ 3

28 U.S.C. § 1391(c) ..................................................................................... 24

28 U.S.C. § 1406(a) ........................................................................... 1, 22, 24

28 U.S.C. § 1441 .................................................................................... 3, 22

Fed. R. Civ. P. 12(b)(3)........................................................................ 1, 2, 21

New York General Business Law § 349 .......................................................... 3

NY CPLR 509 ............................................................................................... 3

### AMENDED MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL AND DISMISS FOR LACK OF VENUE

Defendants Midland Credit Management, Inc. ("Midland Credit"), Midland Funding LLC ("Midland Funding") and Encore Capital Group, Inc. ("Encore") (collectively, "Midland") by their attorneys, Marshall Dennehey Warner Coleman & Goggin, hereby submit their amended memorandum of law supporting their Motion to Disqualify Plaintiff's counsel pursuant to New York State Rule of Professional Conduct 1.9 and to Dismiss Plaintiff's Complaint for lack of venue pursuant to Fed. R. Civ. P. 12(b)(3) or, in the alternative, to transfer this case to the Western District of New York pursuant to 28 U.S.C. § 1406(a).[1]

### I.   PRELIMINARY STATEMENT

Mitchell L. Pashkin ("Pashkin"), counsel for Plaintiff and the putative class, has apparently decided that he need not comply with his ethical obligations to his former client Midland and is now suing Midland in a slew of suits concerning the very same matters regarding which he previously advised Midland. The law does not allow Pashkin to turn around and use confidential information obtained from Midland during his previous representation against them. Accordingly, the Court should disqualify Pashkin from representing Plaintiff and the putative class in this case.

While employed as the Managing Attorney for Cohen & Slamowitz, LLC, n/k/a Selip & Stylianou, LLC ("S&S"), Pashkin litigated on Midland Funding's behalf to collect debts, ensured that such litigation was conducted in

---

[1] Amended to cure defect in second full paragraph of Page 9.

compliance with all applicable laws, consulted with Midland Credit regarding compliance matters, and even participated in the defense of Midland Funding against alleged violations concerning debt collection litigation. The current action alleges improprieties in collection conduct and litigation, including conduct for which Pashkin bore responsibility during portions of Plaintiff's proposed class period.

Further, Midland respectfully requests that the Court dismiss this action pursuant to Fed. R. Civ. P. 12(b)(3), as Plaintiff commenced suit in an improper venue. In the alternative, Midland asks that the Court transfer this matter to the Western District of New York, the only district in New York in which any party to this action resides.

## II.   STATEMENT OF FACTS

### A.   THE PARTIES TO THE SUIT.

Plaintiff, a resident of Dunkirk, New York (Docket No. 15 at ¶ 6), filed this putative class action against Midland Funding, Midland Credit, and Encore in the Supreme Court of the State of New York, County of New York, on March 24, 2015. Docket No. 1-1 at page 3. Midland Funding purchases debts. Ex. A at ¶ 1. Midland Credit manages and services the debt purchased by Midland Funding and is an authorized agent for Midland Funding. Id. Midland Funding is organized under the laws of Delaware and has a principal place of business in San Diego, California. Id. at ¶ 3. Midland Credit is a Kansas Corporation with its principal place of business in San Diego, California. Id. Both Midland Credit and Midland Funding are under the common ownership of

Encore. <u>Id.</u> Encore is also organized under the laws of Delaware and maintains a principal place of business in San Diego, California.

**B.      THE COMPLAINT.**

In his original complaint, Plaintiff alleged "[t]he basis of the venue is Plaintiff's designation" (Docket No. 1-1, page 2 of 17) and asserted venue was proper under NY CPLR 509. <u>Id.</u> at ¶ 4. Midland, acting pursuant to 28 U.S.C. §§ 1441 and 1331, timely removed this action to the Southern District of New York. Docket No. 1.

On July 8, 2015, Plaintiff amended his complaint to assert new basis for venue: Midland's "regular transaction of business within the district" and "having derived substantial revenue from services rendered" here made venue proper. Docket No. 15 at ¶ 3. Plaintiff also asserted that venue was proper "in light of the occurrences which form the basis for this complaint having occurred in whole or in part in this district." <u>Id.</u> at ¶ 4.

Specifically, Plaintiff contends Midland Funding, through counsel, obtained a judgment against Plaintiff and that Midland attempted to enforce it. Docket No. 15 at ¶¶ 22, 37. In so doing, Plaintiff alleges that Midland violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a *et seq.* (FDCPA) and New York General Business Law § 349. <u>Id.</u> at ¶¶ 40-126. Plaintiff further alleges Midland is vicariously liable for the acts of S&S, which obtained the judgment against Plaintiff, as well as Eltman, Eltman & Cooper, P.C. ("Eltman"), which attempted to enforce the judgment. <u>Id.</u>

**C.      SERVICES PERFORMED BY SELIP & STYLIANOU ON BEHALF OF MIDLAND CREDIT.**

3

At times, Midland Credit places defaulted debt obligations with outside counsel for collection. Ex. A at ¶ 4 (MacBeth Decl.). Outside counsel may file suit to collect when appropriate. Id. When filing suit, outside counsel are expected to engage in a meaningful attorney review of the account and exercise counsel's judgment in determining the litigation strategy, the venue in which to file suit, and other matters to ensure compliance with applicable law. Id.

S&S entered into a written agreement with Midland Credit under which S&S agreed to provide legal services on behalf of Midland, including collecting and suing to collect debt (the "Agreement"). Id. at ¶ 10. Under the Agreement, certain entities related to Midland Credit, including Midland Funding, are identified as third party beneficiaries. Id. The Agreement, executed by the parties on or about May 12, 2006, remains in effect today. Id. The Agreement provides that Midland Credit may place accounts with S&S for collection. Id. at ¶ 11. S&S, in the performance of these collection activities, is obligated to abide by and conduct all its activities in a manner consistent with Midland Credit's procedures and applicable local, state and federal laws, rules and regulations, including the FDCPA. Id.

The Agreement further provides that all accounts, records, documents and consumer or Midland Credit related information provided by Midland Credit and Midland Funding-related information provided by Midland Credit to S&S is highly confidential information belonging to Midland Credit. Id. at ¶ 12. S&S agreed not to disclose, publish or cause to be published such information

4

or use it beyond the purpose for what is required to effectuate S&S' obligations under the Agreement. Id.

Finally, the Agreement provides that the "laws of the state of California, without regard to conflicts of law provisions, govern all matters arising out of or relating to this Agreement including, without limitation, its ☐ performance and enforcement. The parties agree to the exclusive jurisdiction and venue of the applicable state and federal courts in San Diego, California." Id. at ¶ 13.

As a service provider to Midland Credit, S&S received Midland Credit's confidential internal operations manuals, policies and procedures. Id. at ¶ 6. S&S also has access to confidential information about Midland Credit and Midland Funding's business practices as it relates both to S&S and to those who owe debts to Midland Funding. Id. S&S, like other firms that represent Midland Credit, participates regularly in conference calls with Midland Credit wherein confidential information bearing on issues such as compliance matters and litigation trends, strategies and goals are disseminated. Id.

### D.   PLAINTIFF☐S ACCOUNT.

Among the debts that Midland Funding purchased and placed with S&S was a defaulted Aspire Visa account issued in the name of Plaintiff in this matter, Mark Sam (the "Account"). Id. at ¶ 26. Midland Credit placed the Account with S&S on or about November 18, 2006. Id. On behalf of Midland Funding, S&S filed suit against Plaintiff on January 10, 2007, in the City Court of Dunkirk, New York, seeking to recover money Plaintiff owed on the Account. Docket No. 15 at ¶ 22. At that time, Plaintiff alleges he resided at 57 Union

Street, Westfield, NY 14787. Id. at ¶ 24. Although S&S obtained an affidavit of personal service of the summons and complaint, documenting service on Plaintiff at his residence on February 1, 2007, Plaintiff denies he received it. Docket No. 15-8 at ¶ 4; *contra* Ex. B (Affidavit of Service). On March 27, 2007, S&S obtained a default judgment against Plaintiff and in favor of Midland Funding. Docket No. 15-1 (Default Judgment).

In March 2014, Midland terminated the services of S&S with respect to the Account and retained Eltman to enforce the judgment against Plaintiff. Docket No. 15 at ¶¶ 37-38. On or about April 21, 2014, Eltman sent an income execution notice to the Chautauqua County Sheriff to attempt to recover on the judgment against Plaintiff. Id. at ¶ 40. Plaintiff, in turn, filed an Order to Show Cause challenging the 2007 service of the summons and complaint in the action to collect the Account. Id. at ¶ 111; Docket 15-8. Eltman did not oppose the Order to Show Cause and entered into a stipulation to vacate the default judgment against Plaintiff. Docket 15 at ¶ 116. The Civil Court of Dunkirk vacated the judgment against Plaintiff on February 4, 2015. Docket 15-17. Thereafter, Plaintiff filed this action.

### E.   PASHKIN'S WORK AT S&S ON BEHALF OF MIDLAND CREDIT AND MIDLAND FUNDING

Plaintiff's counsel Pashkin was employed as an attorney by S&S from June 2011 until his termination in January 2014. Ex. C at ¶¶4, 7 (Selip Decl.); Ex. D. At the time, S&S employed approximately 11 attorneys and a support staff of approximately 60 assistants and paralegals. Ex. C at ¶ 4. Pashkin began his employment at S&S as an Assistant Managing Attorney and

thereafter became Managing Attorney. Id. at ¶ 4. Pashkin, to a great extent, reported directly to Mitchell Selip, who at, the time of Pashkin's employment, was Of-Counsel with S&S. Id. at ¶ 3. Pashkin had supervisory authority in all aspects of litigation. Id. at ¶ 4. A general description of the duties involved in Pashkin's work as managing attorney position is attached as Exhibit E. Id. at ¶ 7. These duties include managing S&S' legal department staff (including approximately eight attorneys) and appearing in court, preparing motions, conducting discovery and reviewing suits. Id. at ¶ 8 & Ex. E. Pashkin and the attorneys he supervised also handled the defense of counterclaims against S&S and its clients, which were frequently asserted under the FDCPA. Ex. C at ¶ 8.

During the time Mr. Pashkin was employed by S&S, Midland Credit placed thousands of accounts a year with S&S for collection, and S&S filed suit to collect many of them. Id. at ¶ 6. Mr. Pashkin managed the litigation process. Ex. C at ¶ 6. As Pashkin's CV states, he actively represented non-bank entities (such as Midland Funding) by "manag[ing] affirmative and defensive litigation throughout New York State on behalf of    non-bank creditors  . Ex. D at page 2. Pashkin actively participated in the litigation of collection lawsuits on behalf of Midland, both directly and in a supervisory capacity, giving him broad access to Midland's confidential and proprietary information. Ex. C at ¶¶ 6, 8-17. Pashkin also provided analytical and strategic advice to Midland concerning its collection litigation. Id. at ¶¶ 13-14.

Notably, Pashkin was solely responsible for reviewing and updating S&S' procedures with regard to identifying the proper venues for filing lawsuits in

compliance with the FDCPA. Id. at ¶ 11. Pashkin also ⬜[g]uarded against improper collection efforts including post-statute of limitations, improper venue, insufficient documentation, and lack of meaningful ability to collect ... improper service of process or re-suit, illegal judgment enforcement efforts, and improper maintenance of default judgments." Ex. D at page 3.

From early 2012 until January 2014, Pashkin was the main interface with Midland Credit and S&S with regard to contested legal matters, counterclaims and allegations of wrongdoing by Midland or S&S that were either asserted in the state court actions filed by S&S or in separate suits filed by consumers. Ex. A at ¶ 16. In that capacity, he occasionally spoke with Midland Credit in-house counsel Kelly MacBeth ("Ms. MacBeth"), who from April 2012 to April 2014 was the liaison for outside firms, including S&S, regarding contested matters and counterclaims. Id. at ¶ 5. Ms. MacBeth approved settlements, reviewed and approved release agreements, and provided advice to the Attorney Firms regarding litigation strategy. Id. At times, Mitchell Selip of S&S joined telephone calls with Ms. MacBeth and Pashkin. Id. at ¶ 17.

During that time, Ms. MacBeth communicated occasionally with Pashkin regarding general case strategy for accounts that S&S was litigating for Midland Credit. Id. at ¶ 17. Pashkin and Ms. MacBeth discussed compliance matters concerning the collection of debts in New York State, including compliance issues arising under the FDCPA and strategies to minimize the risk of suit under the FDCPA and related laws. Id. at ¶ 18. Pashkin and Ms. MacBeth also discussed the handling of particular matters, including claims

8

directed against Midland Credit or Midland Funding through direct lawsuits or counterclaims. Id.

Ms. MacBeth looked to Pashkin as a subject matter expert in the collection of debt in New York State and sought his direction and advice on compliance issues and to advise the company regarding litigation trends in New York. Id. at 19. In that capacity, Ms. MacBeth sought Pashkin's direction and advice on compliance issues and to track and advise regarding litigation trend's in New York. Id. MacBeth also relied on Pashkin to ensure that meaningful attorney review was conducted in connection with each file placed for suit with S&S. Id. at 20. In his supervisory role as an attorney for S&S, Pashkin would have also participated in calls with other Midland Credit employees wherein confidential information was discussed and disseminated. Id. at 21.

While employed by S&S, Pashkin was involved with the representation of Midland in at least one suit threatened against S&S and Midland that outside counsel had been retained to defend. Ex. C at ¶ 18; Ex. F. The claim alleged violations associated with S&S' attempt to enforce a settlement of a Midland Funding-owned debt. Ex. F. Pashkin assessed the facts and merits, evaluated defenses and offered to discuss settlement possibilities with outside counsel. Id.

Pashkin is now engaged in the representation of numerous consumers in connection with litigation related to accounts placed with S&S by Midland Credit. Ex. A at ¶ 23. Pashkin did not ask Midland Credit or Midland Funding if they would waive their attorney-client privilege on any of these matters with

9

respect to any confidential or privileged information Pashkin obtained during the course of his employment at S&S, including, but not limited to, proprietary non-public information and attorney-work product. <u>Id.</u> at ¶ 24. Had he done so, Midland Credit and Midland Funding would have refused to provide such a waiver. <u>Id.</u> at ¶25. Further, Pashkin did not seek a waiver of conflicts or privileges from S&S, which also would have refused. Ex. C at ¶¶ 19-20.

### F.   OTHER LITIGATION ARISING OUT OF PASHKIN'S REPRESENTATIONS ADVERSE TO HIS FORMER CLIENT MIDLAND CREDIT AND HIS FORMER FIRM.

Since entering private practice, Pashkin has represented and continues to represent consumers who were sued by Midland, asserting claims materially adverse Midland in the process. Pashkin provided the following "sample" of suits in which he represented or represents the named defendant:

1. <u>Midland Credit Management v Vargas</u>, Index No. CV-071331-03/KI (Civ Ct, Kings County);

2. <u>Midland Funding LLC v Delillo</u>, Index No. 14614-08 (Sup Ct, Westchester County);

3. <u>Midland Funding, LLC v Ritter</u>, Index No. CV-022850-14/NY (Civ Ct, New York County);

4. <u>Midland Funding, LLC v Pomes</u>, Index No. Index No. 5365-14/NY (Civ Ct, New York County);

5. <u>Midland Funding, LLC v Yearling</u>, Index No. CV-025870-10 (Nassau Dist Ct, First District);

6. <u>Midland Funding, LLC v Kafka,</u> Index No.110798-14 (Sup Ct, Ontario County);

7. <u>Midland Funding, LLC v Sahno,</u> Index No. CV-035025-12/KI (Civ Ct, Kings County);

8. <u>Midland Funding, LLC v Bryant</u>, Index No. CV-40979-07/KI (Civ Ct, Kings County);

9. <u>Midland Funding, LLC v. Digiacomo</u>, Index No. CV-003276-10/KI (Civ Ct, Kings County).

Ex. G (excerpt from Pashkin's Opposition to Midland Funding's Motion to Disqualify in the <u>Midland Funding, LLC v Digiacomo</u> matter).

On April 30, 2015, S&S filed suit against Pashkin seeking to permanently disqualify him from representing defendants in 13 actions in which Pashkin was representing parties against his former clients (including Plaintiff in <u>Midland Funding, LLC v. Mark Sam</u>, Index No. CV-006853-07/DU (Dunkirk, NY City Ct), which gave rise to the present suit). <u>Selip & Stylianou, LLP v. Pashkin</u>, Index No. 60238/2015 (Sup Ct Nassau County, April 30, 2015)). None of the 13 actions, however, were pending before that court. Ex. G at pages 4-5 (Decision and Order, <u>Selip & Stylianou, LLC v. Pashkin</u>). On August 5, 2015, the <u>Selip & Stylianou</u> court ruled that it had no jurisdiction to disqualify Pashkin from the matters in which S&S sought relief because none of the cases were actions before that court. <u>Id.</u> Further, the court found in order to disqualify Pashkin, S&S must move to disqualify on a case-by-case basis, resort to the Appellate Divisions or file complaints with the appropriate Grievance Committees. <u>Id.</u> at page 5. The present motion is easily distinguished from that action, however, as Midland moves the only in connection with only a case pending before this Court, as the <u>Selip & Stylianou</u> court observed was necessary to obtain judicial relief. <u>Id.</u>

In other cases raising related issues concerning the exploitation of a former client's confidential information, Pashkin represents Brett Mule in <u>Capital One Bank (USA), N.A. v. Mule</u>, Index No. CEC 5490-13 (Suffolk Dist Ct, First Dist) and <u>Midland Funding, LLC v. Mule</u>, Index No. CECV 4022-13 (Suffolk Dist Ct, First Dist). <u>See</u> Ex. I & J (Orders disqualifying Pashkin as counsel). These actions arise out of debt collection litigation in which Pashkin participated, respectively, as counsel to Capital One Bank and Midland Funding. Ex. I & J. In each case, the court issued an order disqualifying Pashkin from representing Mule in actions against Pashkin's former clients at S&S. Ex. I & J. Pashkin's appeals of these orders are pending. Ex. K & L.

Pashkin also represents Plaintiff in two related actions against S&S <u>Mark Sam v. Cohen & Slamowitz, LLP</u>, No. 1:14-cv-00611-JTC (W.D.N.Y. July 29, 2014), and <u>Mark Sam v. Selip & Stylianou, LLP</u>, Index No. 602334/2015 (Sup Ct, Nassau County, April 15, 2015). S&S removed the second matter to the United States District Court for the Eastern District of New York, where it was assigned case number 2:15-cv-02780-JS-GRB. Ex. M. Currently pending in that matter is S&S' motion to dismiss or transfer to the Western District of New York.

**<u>ARGUMENT</u>**

**III.   <u>PASHKIN SHOULD BE DISQUALIFIED</u>**

Whether the law of California or New York is applied to the question of disqualification, the result reached is the same: Pashkin should be disqualified from representing Plaintiff in this matter.

### A. CALIFORNIA LAW GOVERNS THE PRESENT MOTION TO DISQUALIFY.

#### 1. The Agreement Provides that California Law Applies.

As set forth *supra* at II.C., in 2006, S&S entered the Agreement with Midland Credit under which S&S agreed to provide legal services, including collecting and litigating to collect debt. The Agreement provides that all matters arising out of or related to the Agreement are to be governed by California law. It further provides that all confidential information Midland Credit provided S&S in the course of its representation would only be used in furtherance of the purposes of the Agreement, which was to allow S&S to collect on behalf of Midland Credit and Midland Funding.

The Agreement was in effect at the time S&S filed suit against Plaintiff in 2007 and continues to be in effect today. S&S obtained and attempted to enforce the judgment at issue against Plaintiff, which forms the basis of Plaintiff's present action against Midland. Pashkin seeks to utilize information provided to S&S pursuant to the Agreement in furtherance of the present action, to the detriment of his former client, Midland Credit. Therefore, this action arises directly out of, and is unquestionably related to, the Agreement between Midland Credit and S&S. As such, the Agreement's choice of law

13

provision directs that California law be applied when determining whether to disqualify Pashkin.

### 2.   New York Law Supports Enforcement of Contractual Choice of Law Provisions

Under New York choice of law provisions, courts are required to respect the parties' right to contract for choice of law and forum, so long as the chosen law bears some kind of reasonable relationship to the parties or the transaction. Boss v. Am. Express Fin. Advisors, Inc., 15 A.D.3d 306, 307 (1st Dept. 2005), aff'd 6 N.Y.3d 242 (2006) ("It is the well-settled policy of the courts of this State to enforce contractual provisions for choice of law and selection of a forum for litigation."); Welsbach Electric Corp. v MasTec North America, Inc., 7 N.Y.3d 624, 629, 859 N.E.2d 498, 825 N.Y.S.2d 692 (2006) ("A basic precept of contract interpretation is that agreements should be construed to effectuate the parties' intent."). If the principal place of business of one of the parties to the agreement is in the state selected as the law chosen to apply, courts have held that there is a sufficient connection to apply that state's law. Finucane v. Interior Constr. Corp., 264 A.D.2d 618, 620 (1st Dept. 1999).

In accordance with the Restatement (Second) of Conflicts § 187(2), the chosen law must not violate some fundamental public policy of New York. See, e.g., Hugh O'Kane Elec. Co., LLC v MasTec North America, Inc., 19 A.D.3d 126, 127, 797 N.Y.S.2d 45 (1st Dept 2005) (Florida choice of law provision); Finucane, 264 A.D.2d at 620 (Oklahoma choice of law provision). This exception is reserved, however, "for those foreign laws that are truly obnoxious." Cooney v. Osgood Mach., 612 N.E.2d 277 (N.Y. 1993). The party

seeking to invoke the exception bears a heavy burden of proving that application of the chosen law would be offensive to a fundamental public policy of New York. Id.

Both of these requirements are satisfied here. First, Midland Credit, Midland Funding, and Encore's principal places of business are all in California. Second, California law on disqualification of counsel is substantially similar to New York law on the matter. For counsel to be disqualified, both New York and California law require: (1) that the complaining party is a client or former client of the attorney it seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations. Simmons v. Morgan Stanley Smith Barney, LLC, No. 11cv2889 WQH-MDD, 2014 U.S. Dist. LEXIS 29797, at *39 (S.D. Cal. March 6, 2014) (quoting Montgomery v. Super. Ct., 186 Cal. App. 4th 1051, 1056, 112 Cal. Rptr. 3d 642 (2010)) (internal quotation marks omitted); Hempstead Video, Inc. v. Incorporated Vill. Of Valley Stream, 409 F.3d 127, 133 (2d Cir. 2005) (quoting Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983)). New York law adds a third factor: the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his or her prior representation of the client. Hempstead Video, 409 F.3d at 133. The difference between California and New York law is not fundamental, however, as under the standard applied in New York, where the second element is satisfied, satisfaction of the third is presumed. Piven v. Harwood Feffer LLP, 14 Civ. 6601 (LAK), 2015 U.S. Dist. LEXIS 35516, at *2-*3

15

(S.D.N.Y. March 11, 2015). Accordingly, application of California law would not violate the fundamental public policy of New York.

**B.    CALIFORNIA LAW PROVIDES THAT PASHKIN SHOULD BE DISQUALIFIED FOR ADVOCATING AGAINST HIS FORMER CLIENT IN A MATTER SUBSTANTIALLY RELATED TO HIS FORMER REPRESENTATION.**

Under California law, motions for disqualification of counsel are decided in accordance with state law. In re County of Los Angeles, 223 F.3d 900, 995 (9th Cir. 2000). Rule 3-310 of the Rules of Professional Conduct of the State Bar of California requires that attorneys avoid the representation of adverse interests. Pursuant to Rule 3-310(E), an attorney may not, without the former client's written consent, "accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." When an attorney violates this rule by "successively represent[ing] clients with adverse interests, and where the subjects of the two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second representation." Nichols Inst. Diagnostics, Inc. v. Scantibodies Clinical Lab., Inc., Civ. No. 02CV0046-B(LAB), 2002 U.S. Dist. LEXIS 28406, at *10-*11 (March 21, 2002) (quoting Speedee Oil Change Sys., Inc., 20 Cal. 4th at 1146). A party seeking disqualification need not prove that the attorney possesses the former client's confidential information, rather, "[i]t is enough to show a substantial relationship between the former and current representation." Sunbeam Prods., Inc. v. Oliso, Inc., No. C 13 3577 SI, 2014 U.S. Dist. LEXIS

29058, at *5 (N.D. Cal. Mar. 4, 2014) (quoting HF Ahmanson & Co. v. Salomon Bros., Inc., 229 Cal. App. 3d 1445, 1452 (1991)).

In determining whether a substantial relationship exists, courts assess "(1) the attorney's degree of involvement in the former representation; and (2) the relationship between the subjects of the two representation[s]." Sunbeam Prods., Inc., 2014 U.S. Dist. LEXIS at 9-10 (citing Jessen v. Hartford Cas. Ins. Co., 111 Cal. App. 4th 698, 709-12 (2003)). "'Substantiality is present if the factual contexts of the two representations are similar or related.'" Id. (quoting Trone v. Smith, 621 F.2d 994, 998 (9th Cir. 1980)). The former client need not prove that the attorney possesses confidential information; "instead, 'courts ask if confidential information material to the current dispute would normally have been imparted to the attorney by virtue of the nature of the former representation.'" Id. (quoting Ahmanson, 229 Cal. App. 3d at 1454). "'Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory.'" Simmons, 2014 U.S. Dist. LEXIS 29797, at *39-*40 (S.D. Cal. March 6, 2014) (quoting Montgomery, 186 Cal. App. 4th at 1056).

First, there is no question that Pashkin represented Midland. An attorney represents a client "when the attorney knowingly obtains material confidential information from the client and renders legal advice or services as a result."

Nichols Inst. Diagnostics, Inc., 2002 U.S. Dist. LEXIS 28406, at *11-*12 (quoting Speedee Oil Change Sys., Inc., 20 Cal. 4th at 1148)). As the former Managing Attorney of S&S, Pashkin both litigated on behalf of Midland Credit and Midland Funding and supervised other attorneys doing so. He was charged with assuring compliance with applicable law and the policies and procedures provided to him by Midland Credit. Pashkin's former position with S&S plainly involved receipt of material, confidential information and the employment of that information in connection with the rendering of legal advice and services to Midland.

Second, there is a substantial relationship between Pashkin's former representation of Midland and Pashkin's representation of Plaintiff in the current suit, as the factual contexts of the two representations are similar. Pashkin was the Managing Attorney at a the firm that obtained the judgment in question, litigating, managing litigation on behalf of Midland Credit as well as consulting regarding compliance and litigation strategy in defending claims and counterclaims asserted against Midland. Further, there is an extremely close relationship between the subjects of the two representations. This case involves allegations that Midland (or its counsels S&S and Eltman, for whose conduct Plaintiff alleges Midland is vicariously liable) violated the FDCPA and state law by: (1) attempting to enforce invalid judgments (Docket No. 15 at ¶¶ 40-44); (2) improperly representing that an allegedly invalid judgment was enforceable (id. at ¶¶ 46-49; 92-95); (3) failing to conduct a meaningful review of Plaintiff's file (id. at ¶¶ 51-55); (4) improperly maintaining judgments allegedly obtained in an

18

improper venue or without proper service of process (id. at ¶¶ 60-68); (5) failing to provide notices required under the FDCPA prior to issuing income executions (id. at ¶¶ 70-76); (6) enforcing judgments including allegedly unlawful interest (id. at ¶¶ 78-82); (7) collecting debts for which Midland allegedly could not produce a complete chain of title (id. at ¶¶ 84-86); (8) collecting debts for which Midland allegedly could not produce proof of assignment (id. at ¶¶ 88-90); (9) improperly substituting Eltman for S&S as counsel (id. at ¶¶ 92-95) and bringing suit in an improper judicial district (id. at ¶¶ 97-126). These allegations concern matters under Pashkin's purview as Managing Attorney at S&S, and the class period that Plaintiff alleges 	January 10, 2007 to March 24, 2015 	includes the time period when Pashkin was directly responsible for preventing the violations that he is now alleges. Docket No. 15 at ¶ 128. Thus, access to confidential information by Pashkin in the course of the first representation is presumed and California law mandates disqualification. See Montgomery, 186 Cal. App. 4th at 1056.

### C.   NEW YORK LAW ALSO MANDATES PASHKIN'S DISQUALIFICATION

Although Midland Credit's contract with S&S provides that California law governs the issue of whether Pashkin should be disqualified, application of New York law would also compel Pashkin's disqualification. New York law provides that the Court may disqualify Pashkin pursuant to the Court's inherent power to "preserve the integrity of the adversary process." Hempstead Video, Inc., 409 F.3d at 132. In exercising this power, courts "balance a client's right freely to choose his counsel against the need to maintain the highest standards of the

profession." <u>Franzone v. Lask</u>, 14 Civ. 3043 (GHW)(GWG), 2015 U.S. Dist. LEXIS 38606, at *10 (S.D.N.Y. March 26, 2015) (quoting <u>Hempstead Video, Inc.</u> 409 F.3d at 132). Although the party seeking disqualification must meet a heavy burden of proof to prevail, "any doubt is to be resolved in favor of disqualification." <u>Id.</u> (quoting <u>Hull v. Celanese Corp.</u>, 513 F.2d 568, 571 (2d Cir. 1975) (citations omitted). This is because the "public's interest in the outcome of litigation is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case." <u>Id.</u> (quoting <u>United States v. Oberoi</u>, 331 F.3d 44, 51 (2d Cir. 2003) (internal punctuation omitted).

The Second Circuit requires the establishment of a third element, not required under California law, in order to disqualify an attorney in a case of successive representation: that the attorney had access to, or was likely to have had access to, relevant privileged information. <u>Hempstead Video, Inc.</u>, 409 F.3d at 133.

The Second Circuit distilled New York Rule of Professional Conduct 1.9(a), (c) to require disqualification when:

(1) the moving party is a former client of the adverse party's counsel;
(2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his or her prior representation of the client.

<u>Hempstead Video, Inc.</u>, 409 F.3d at 133 (quoting <u>Evans v. Artek Sys. Corp.</u>, 715 F.2d 788, 791 (2d Cir. 1983)). Where the second element is satisfied,

satisfaction of the third is presumed. Piven v. Harwood Feffer LLP, 14 Civ. 6601 (LAK), 2015 U.S. Dist. LEXIS 35516, at *2-*3 (S.D.N.Y. March 11, 2015). Under the New York standard, Pashkin should also be disqualified.

As set forth in section III.B, *supra*, Midland is Pashkin's former client and there is a substantial relationship between Pashkin's work as Managing Attorney at S&S and the present matter.

Furthermore, due to the nature of the work Pashkin performed on behalf of Midland, he had access to privileged information of Midland relevant to the claims Plaintiff asserts. Pashkin gained knowledge of Midland Credit's confidential strategies regarding collection litigation. He consulted with Midland Credit's in-house counsel regarding collection compliance issues and was responsible for ensuring that collection suits were filed in the proper venue. He now asserts claims regarding violations of laws governing collection litigation, including violations that allegedly occurred on his watch. Where, as is the case here, "an attorney is in a position to use privileged information acquired in his or her representation of a client against that client in another matter[,]" disqualification is necessary to avoid tainting the trial. Piven, 2015 U.S. Dist. LEXIS 35516, at *6 (quoting Commercial Union Ins. Co. v. Marco Int'l Corp., 75 F. Supp.2d 108, 110 (S.D.N.Y. 1999)) (internal quotation marks omitted).

## IV.   **THIS ACTION SHOULD BE DISMISSED AS VENUE IS LACKING**

Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3), as the claims asserted bear no connection to the Southern District of

New York. Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a) require the dismissal, or transfer in the interest of justice, of a claim where venue is lacking. The choice of dismissal or transfer is at the discretion of the district court. Minnette v. Time Warner, 997 F.2d 1023, 1026 (2nd Cir. 1993). "Plaintiff bears the burden of establishing that venue is properly laid in the district in which the complaint was filed." Universal Marine Medical Supply, Inc. v. Lovecchio, 8 F.Supp.2d 214, 219 (E.D.N.Y. 1998).

Plaintiff originally filed this case in the Supreme Court of the State of New York, County of New York. Midland removed to the Southern District of New York because, in order to remove to federal court, it was obligated to remove to the district court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). In such a case, "[t]he removal statute, and not the ordinary federal venue statute, governs venue in removed cases." PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 72 (2d Cir. 1998). A party who removes an action from state to federal court does not, however, waive the defense of improper venue as to the underlying state court action. AIG Fin. Prod. Corp. v. Pub. Util. Dist. No. 1, 675 F. Supp. 2d 354, 367, n.10 (S.D.N.Y. 2009) (citation and internal quotation marks omitted). As venue was improper in the underlying state court action, this case should be dismissed. See id.

New York Civil Practice Law Rule 503(a) provides that "the place of trial shall be in the county in which one of the parties resided when [the action] was commenced; or, if none of the parties then resided in the state, in any county designated by the plaintiff." Ordinarily, a plaintiff's choice of venue is entitled to

some deference; however, a plaintiff who selects an improper venue forfeits her right to designate the place of trial. <u>Thomas v. Burrus</u>, N.Y.S.2d 412, 413 (N.Y. App. Div. 2009).

Under New York law, the proper venue for Plaintiff's state court action was Chautauqua County, where Plaintiff, the only party residing in New York State at the time he commenced the action, resided. <u>See</u> Docket No. 1-1 at ¶ 5. None of the Midland entities are located in New York or formed under its laws. As venue is proper in the county in which one of the parties resides, Chautauqua County was the proper venue for the state court suit.

Plaintiff's reliance on CPLR 509 to establish venue in New York County is misplaced. CPLR 509 provides that "[n]otwithstanding any provision of this article, the place of trial of an action shall be in the county designated by the plaintiff, unless the place of trial is changed to another county by order upon motion." CPLR 509, however, "merely sets forth a rule that where a plaintiff designates venue, otherwise improper under CPLR 503, and no one moves for, or consents to, a change of venue, any judgment entered is not jurisdictionally defective." <u>Anderson v. Ungar</u>, N.Y.S.2d 310, 311 (N.Y. App. Div. 1999). Thus, CPLR 509 is intended as a savings clause rather than an independent basis for venue, and Plaintiff cannot use it to establish venue in New York County (or by extension, in the Southern District of New York).

## V.   IF THIS ACTION IS NOT DISMISSED, IT SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF NEW YORK

If the Court declines to dismiss this case, Midland asks that it be transferred to the Western District of New York. Improper venue may be

corrected by transfer under 28 U.S.C. § 1406(a), which provides that a district court of a district in which is filed a case laying venue in the wrong district "shall dismiss, or if it be in the interest of justice, transfer such case to any district" in which it could have been brought. Courts have "considerable discretion in deciding whether to transfer a case in the interest of justice." Morath, 2008 U.S. Dist. LEXIS, at *2-*3 (quoting Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 435 (2d Cir. 2005)).

In determining if a transfer is appropriate, a court may take into account the benefits of "expeditious and orderly adjudication of cases and controversies on their merits." Id. at *3 (quoting Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67 (1962)). For class actions, such as the present matter, venue is determined by reference to the named parties and their claims only. Id. (citing United States ex rel. Sero v. Preiser, 506 F.2d 1115, 1129 (2d Cir. 1974)).

As the only party to this action residing in New York State resides within the Western District of New York, venue in the Western District is proper. Although Plaintiff asserts venue is proper in the this District because Midland transacts business and derives revenue here (Docket No. 15 at ¶ 3), this is relevant to personal jurisdiction under 28 U.S.C. § 1391(c) but has little bearing on venue. Morath, 2008 U.S. Dist. LEXIS 28244, at *4. As the alleged conduct occurred in the Western District of New York, and that the only party residing in New York State resides there, transfer is proper.

Further, as noted *supra* in II.F., Plaintiff, represented by Pashkin, filed an action against S&S in the Western District of New York arising out of the

24

same facts as this matter. In that case, Plaintiff alleges that "[v]enue in this district is proper based on Plaintiff's location, defendants' regular transaction of business within this district; and defendants having derived substantial revenue from services rendered in this district". No. 1:14-cv-00611-JTC (W.D.N.Y. July 29, 2014); Docket 8-1 at ¶ 3. Another such case, also noted in II.F., is pending in the Eastern District of New York, though a motion to transfer to the Western District is awaiting decision. Sam v. Selip & Stylianou, 2:15-cv-02780-JS-GRB (W.D.N.Y.) Docket No. 4-1. Judicial economy dictates that the present matter should be litigated in the same district as the others, if not consolidated with them.

## VI.   CONCLUSION

For these reasons, Midland respectfully requests that its motion be granted, that Pashkin be disqualified as counsel for Plaintiff, that this case either be dismissed or stayed 90 days and transferred to the Western District of New York and that the Court grant such further relief as deemed proper.

Dated:      September 13, 2015              Respectfully submitted,
            New York, New York

                                    **MARSHALL, DENNEHEY, WARNER,
                                    COLEMAN & GOGGIN, P.C.**


            By:     _____
                    Matthew B. Johnson (MJ 1622)
                    88 Pine Street, 21st Floor
                    New York, New York 10005
                    (212) 376-6433
                    MBJohnson@mdwcg.com
                    *Attorneys for Defendants Midland Credit
                    Management, Inc., Midland Funding, LLC
                    and Encore Capital Group, Inc.*